**OUTTEN & GOLDEN LLP**
Adam T. Klein*
Ossai Miazad*
Lewis M. Steel*
Christopher M. McNerney*
Cheryl-Lyn Bentley*
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000

**PHILADELPHIA LAWYERS FOR SOCIAL EQUITY**
Michael Lee
Pennsylvania Bar No. 307008
Michael Hardiman
Pennsylvania Bar No. 27018
1501 Cherry Street
Philadelphia, PA 19102
(215) 995-1230

**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
Jon Greenbaum*
Mateya B. Kelley*
1401 New York Ave., NW
Washington, DC  20005
(202) 662-8600

**PUBLIC INTEREST LAW CENTER**
Benjamin D. Geffen
Pennsylvania Bar. No. 310134
1709 Benjamin Franklin Parkway, 2d Floor
Philadelphia, PA 19103
(267) 546-1308

**WILLIG, WILLIAMS & DAVIDSON**
Ryan Allen Hancock
Pennsylvania Bar No. 92590
Danielle Newsome
Pennsylvania Bar No. 320772
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
(215) 656-3679

*Pro hac vice motions filed*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK LONG, JOSEPH SHIPLEY, and MICHAEL WHITE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY,<br><br>Defendant. | **FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**CIVIL ACTION NO. 2:16-cv-1991-PBT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Frank Long, Joseph Shipley, and Michael White (collectively, "Plaintiffs"),

individually and on behalf of all others similarly situated, allege, upon personal knowledge as to

themselves and upon information and belief as to other matters, as follows:

## INTRODUCTION

1.      Plaintiffs bring this case on their own behalf and that of a proposed class of all others similarly situated against the Southeastern Pennsylvania Transportation Authority ("SEPTA" or "Defendant") for violation of their rights under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and Pennsylvania's Criminal History Record Information Act ("CHRIA"), 18 Pa. Cons. Stat. Ann. § 9125.

2.      Plaintiffs sought employment at SEPTA.  They were qualified for the jobs they sought and were subjected to SEPTA's criminal background check process.

3.      In screening applicants, SEPTA fails to comply with federal law governing the procurement and use of background check reports ("consumer reports") for employment purposes.

4.      Specifically, before procuring consumer reports from U.S. Security Care, Inc. ("Security Care") and/or other background check companies called "consumer reporting agencies" ("CRAs"), SEPTA fails to provide job applicants with a clear and conspicuous disclosure in writing, in a document that consists solely of the disclosure, that it may obtain a consumer report for employment purposes, in violation of 15 U.S.C. § 1681b(b)(2)(A)(i).

5.      In Congress's judgment, an employer's failure to provide job applicants with a clear and conspicuous disclosure is unfair and inequitable and causes concrete injury to those job applicants.  *See* 15 U.S.C. § 1681(b).

6.       SEPTA's policy causes concrete injury to job applicants because, among other examples, it causes confusion and deprives job applicants of adequate notice of that to which they are consenting.

7.     SEPTA also routinely rejects job applicants based on information contained in consumer reports that it obtains from CRAs.

8.     Specifically, SEPTA systemically violates section 1681b(b)(3)(A) of the FCRA by using consumer reports to make adverse employment decisions without first providing the applicant and/or employee who is the subject of the report with sufficient and timely notification of its intent to take an adverse action, a copy of the report, and a summary of rights under the FCRA.  15 U.S.C. § 1681b(b)(3)(A)(i) and (ii).

9.     In Congress's judgment, an employer's failure to provide job applicants with a copy of their consumer report and a summary of their rights under the FCRA before it takes an adverse action is unfair and inequitable and causes concrete injury to those job applicants.  *See* 15 U.S.C. § 1681(b).

10.      SEPTA's policy causes concrete injury to job applicants because, among other examples, it prevents them from reviewing the accuracy of the information reported about them that SEPTA uses in taking adverse actions, engaging with SEPTA about the information it is using to make a determination about the applicants' suitability for the job, and learning of their statutory rights under the FCRA.

11.     SEPTA has willfully violated the above-mentioned provision of the FCRA.

12.     In addition, SEPTA routinely violates the CHRIA through its blanket policy and practice of disqualifying job applicants with unrelated felony convictions from employment in positions involving the operation of SEPTA vehicles.  *See* 18 Pa. Cons. Stat. Ann. § 9125(b) ("Felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied.").

3

13.     SEPTA has willfully violated the above-mentioned provision of the CHRIA.

14.     On behalf of themselves and others similarly situated, Plaintiffs seek injunctive and declaratory relief; actual or statutory damages; exemplary and punitive damages; pre-judgment and post-judgment interest; and reasonable attorneys' fees, costs, and expenses associated with this action.

## JURISDICTION AND VENUE

15.     This Court has original subject matter jurisdiction over Plaintiffs' FCRA claims pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331 and jurisdiction over their CHRIA claim pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

16.     Plaintiffs' CHRIA claim is so closely related to their FCRA claims that they form part of the same case or controversy under Article III of the United States Constitution.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because SEPTA resides in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

18.     This Court has personal jurisdiction over this matter because SEPTA is located in this District, conducts substantial business activity in this District, and because many of the unlawful acts described herein occurred in this District and gave rise to the claims alleged.

## PARTIES

### Plaintiffs

19.     Plaintiffs and the proposed Class Members they seek to represent are "consumers" as defined by the FCRA, 15 U.S.C. § 1681a(c).

20.     Plaintiffs and the proposed Class Members they seek to represent are employment applicants and persons aggrieved for the purposes of the CHRIA.

4

*Frank Long*

21.     Mr. Long is a 56-year old resident of Philadelphia, Pennsylvania.  At the time of his application to SEPTA, Mr. Long was working as a bus driver for a Philadelphia-based school bus company.  Prior to that, he worked in the warehouse division of a national healthcare company for over 12 years.

22.     Mr. Long has regularly volunteered his time to his community, working with neighborhood watch programs, community garden clean-ups, and youth and senior citizens programs through his church.

23.     In or about October 2014, Mr. Long applied for the position of Bus Operator with SEPTA.

24.     On or about October 17, 2014, Mr. Long interviewed for a Bus Operator position with SEPTA.

*Joseph Shipley*

25.     Mr. Shipley is a 45-year old resident of Philadelphia, Pennsylvania.  At the time of his application to SEPTA, Mr. Shipley was working as a conductor for an international transportation company.  Prior to that, Mr. Shipley worked for approximately two years as a Transportation Counselor for a company transporting juveniles from court to school.

26.     In or about October 2015, Mr. Shipley applied for the position of Railroad Supervision Manager with SEPTA.

27.     On or about January 28, 2016, Mr. Shipley interviewed for a Railroad Supervision Manager position with SEPTA.

*Michael White*

28.     Mr. White is a 33-year old resident of Philadelphia, Pennsylvania.  At the time of his application to SEPTA, Mr. White had been working as a delivery driver for approximately two years.  Prior to that, he worked as a driver and mailroom clerk for another company for approximately one-and-a-half years.

29.     Mr. White is active in his church where he has served as a deacon for the last two years.

30.     In or about April 2015, Mr. White applied for the position of Bus Operator with SEPTA.

31.     On or about April 29, 2015, Mr. White interviewed for a Bus Operator position with SEPTA.

**<u>Defendant</u>**

32.     SEPTA operates the United States' sixth-largest public transportation system.  It services over 750,000 passengers on a weekday and employs approximately 9,000 employees.

33.     SEPTA is a public transit authority organized under the laws of the Commonwealth of Pennsylvania, and maintains its headquarters at 1234 Market Street, Philadelphia, Pennsylvania 19107.

34.     At all relevant times, SEPTA has been a "person" using "consumer reports" of Plaintiffs and proposed Class Members for "employment purposes" and has taken "adverse action" against Plaintiffs and similarly situated applicants, as defined by the FCRA.  These adverse actions have been based wholly or in part on those consumer reports.

35.     At all relevant times, SEPTA has been an "employer" and a "person" and/or an "organization" for purposes of the CHRIA.

36.     At all relevant times, SEPTA has been aware of the requirements of the FCRA and CHRIA, and yet has disregarded those requirements.

## STATEMENT OF FACTS

**Plaintiff Long's Experience**

37.     In or about October 2014, Mr. Long applied to be a Bus Operator with SEPTA.

38.     On or about October 17, 2014, Mr. Long interviewed with a SEPTA recruiter for the Bus Operator position.

39.     At that interview, Mr. Long discussed the experiences that qualified him for the position, including his Commercial Driver's License and his job as a school bus driver at the time of the interview.

40.     The recruiter told Mr. Long that he thought Mr. Long would be a good driver, he interviewed well, and was qualified for the position.

41.     Consequently, on the same day of the interview, the recruiter extended an oral offer of employment to Mr. Long contingent on a background check.

42.     At SEPTA's behest, Mr. Long completed a SEPTA form disclosing that he has a criminal history and authorizing SEPTA to conduct a background check.  The SEPTA form was not only unclear and inconspicuous, but, in addition, it did not "consist solely of the disclosure" that a consumer report may be procured for employment purposes, and instead contained numerous statements and requests in clear violation of the requirements set out by the FCRA as described more fully below.

43.     SEPTA did not provide Mr. Long with any other authorization form that complied with the FCRA.

7

44.     In or about late October, 2014, the recruiter called Mr. Long revoking the offer of employment for the Bus Operator position based on Mr. Long's previous criminal history. The recruiter told Mr. Long that he could try applying for a Maintenance Custodian position with SEPTA.

45.     On his record, Mr. Long had 1997 drug convictions for possession and manufacture of a controlled substance originating from a 1994 arrest.

46.     Mr. Long's criminal history is not relevant to the Bus Operator position for which he applied for reasons including the nature of the crime, the age of the conviction and the years Mr. Long has been in the general population without any further convictions.

47.     Over four months later, in or about early March, 2015, Mr. Long received a letter from SEPTA's Human Resources Division Recruitment Manager, stating that "based on [its] hiring criteria," SEPTA had decided not to hire Mr. Long for the Bus Operator position. The correspondence indicated that this decision was made from the information SEPTA had received from Security Care's background check. The report enclosed with the letter indicated that Security Care completed the background check back in November 2014.

**Plaintiff Shipley's Experience**

48.     In or about October 2015, Mr. Shipley applied to be a Railroad Supervision Manager with SEPTA.

49.     On or about January 28, 2016, Mr. Shipley interviewed with a SEPTA employee for the Railroad Supervision Manager position.

50.     Pursuant to SEPTA's policies, the Railroad Supervision Manager position is considered a position involving the operation of a SEPTA vehicle.

51.     At that interview, Mr. Shipley discussed the experiences that qualified him for the position, including his significant experience working for transportation companies.

52.     At SEPTA's behest, Mr. Shipley completed two SEPTA forms disclosing that he has a criminal history and authorizing SEPTA to conduct a background check.  The SEPTA forms were not only unclear and inconspicuous, but, in addition, did not "consist solely of the disclosure" that a consumer report may be procured for employment purposes, and instead contained numerous statements and requests in clear violation of the requirements set out by the FCRA as described more fully below.

53.     SEPTA did not provide Mr. Shipley with any other authorization form that complied with the FCRA.

54.     Mr. Shipley's interview went well, and SEPTA offered him the position on approximately February 29, 2016.

55.     On approximately March 22, 2016, Mr. Shipley received a letter from SEPTA informing him that SEPTA's new hire orientation was scheduled for March 28, 2016.

56.     Approximately two days later, Mr. Shipley received a telephone call from a SEPTA recruiter telling him not to report to work, and that his background check had not been cleared.

57.     On approximately March 25, 2016, the SEPTA recruiter called Mr. Shipley back and told him that SEPTA was denying him the Railroad Supervision Manager position because of his criminal history.  The recruiter followed up on her call to Mr. Shipley with a letter stating the same.

58.     In response to Mr. Shipley's request for more information, SEPTA sent him a second letter from its counsel, dated April 26, 2016, notifying Mr. Shipley that SEPTA

disqualified him pursuant to its categorical lifetime ban on hiring anyone who was convicted of a crime "involving the possession, sale, distribution, manufacture and use of controlled substances," for "[a]ll positions which require the operation of a SEPTA vehicles as part thereof, whether or not they are in revenue service" and "[a]ll positions requiring the maintenance, repair or operation of power facilities, substations, towers, signals, vehicles or rolling stock," and enclosing a copy of the SEPTA policy with the relevant section highlighted.

59.     On his record, Mr. Shipley has 2001 drug-related convictions arising out of a single arrest in 2000.

60.     Mr. Shipley's criminal history is not relevant to the Railroad Supervisor Manager position for which he applied for reasons including the nature of the crime, the age of the conviction, and the years Mr. Shipley has been in the general population without any further convictions.

61.     Mr. Shipley never received a copy of his consumer report or a statement of his rights under the FCRA from SEPTA.

**Plaintiff White's Experience**

62.     In or about April 2015, Mr. White applied to be a Bus Operator with SEPTA.

63.     On or about April 29, 2015, Mr. White interviewed with a SEPTA employee for the Bus Operator position.

64.     At that interview, Mr. White discussed the experiences that qualified him for the position, including his job as a delivery driver at the time of the interview and that he had recently obtained his Commercial Driver's License.

65.     At SEPTA's behest, Mr. White completed a SEPTA form disclosing that he has a criminal history and authorizing SEPTA to conduct a background check.  The SEPTA form was

not only unclear and inconspicuous, but, in addition, it did not "consist solely of the disclosure" that a consumer report may be procured for employment purposes, and instead contained numerous statements and requests in clear violation of the requirements set out by the FCRA as described more fully below.

66.     SEPTA did not provide Mr. White with any other authorization form that complied with the FCRA.

67.     Mr. White's interview went well, and the SEPTA employee with whom he interviewed told him that he would receive more information about starting training.

68.     Mr. White followed-up with SEPTA repeatedly, and was told that SEPTA was waiting on the results of his background check.

69.     Approximately six months after his interview, and following Mr. White's numerous follow ups, Mr. White received a letter from SEPTA denying him the Bus Operator position because of his criminal history.

70.     On his record, Mr. White has 2006 and 2007 drug-related convictions.

71.     Mr. White's criminal history is not relevant to the Bus Operator position for which he applied for reasons including the nature of the crime, the age of the conviction and the years Mr. White has been in the general population without any further convictions.

72.     Mr. White never received a copy of his consumer report or a statement of his rights under the FCRA from SEPTA.

**Factual Allegations Common to All Class Members**

***The FCRA Claim***

73.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: First, that consumer reports were playing a central role in people's lives at crucial moments, such

as when they applied for a job or credit, and when they applied for housing.  Second, despite

their importance, consumer reports were unregulated and had widespread errors and

inaccuracies.

74.     Congress sought for consumer reports to be "fair and equitable to the consumer"

and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer

reports.  15 U.S.C. § 1681.

75.     Congress was particularly concerned about the use of background reports in the

employment context, and therefore defined the term "consumer reports" to explicitly include

background reports procured for employment purposes.  *See* 15 U.S.C. § 1681a(d)(1)(B).

76.     Through the FCRA, Congress required employers to disclose that a consumer

report may be obtained for employment purposes before procuring the report.  15 U.S.C. §

1681b(b)(2)(A)(i).

77.     Specifically, the FCRA requires that employers "may not procure a consumer

report or cause a consumer report to be procured, for employment purposes with respect to any

consumer," unless:

(i)     a clear and conspicuous disclosure has been made in writing to the
        consumer at any time before the report is procured or caused to be
        procured, *in a document that consists solely of the disclosure*, that a
        consumer report may be obtained for employment purposes; and

(ii)    the consumer has authorized in writing (which authorization may be made
        on the document referred to in clause (i)) the procurement of the report by
        that person.

15 U.S.C. § 1681b(B)(2)(A)(i) and (ii) (emphasis added).  This requirement is frequently

referred to as the "stand-alone disclosure requirement."

78.     The FCRA stand-alone disclosure requirement imposes the duty on SEPTA to

provide a "clear and conspicuous" disclosure to prospective employees that a consumer report

about them will be procured.

79.     The FCRA stand-alone disclosure requirement puts consumers on notice that a report about them may be prepared.  This knowledge enables consumers to exercise a variety of other substantive rights conferred by the statute, many of which work to ensure accuracy, confidentiality, and fairness.  15 U.S.C. § 1681c(a) (limiting temporal scope of information that can be reported); § 1681e(b) (mandating that consumer reporting agencies employ procedures to ensure "maximum possible accuracy" in reports); § 1681k (requiring consumer reporting agencies that report public record information to employers to either provide notice to the consumer that information is being reported or have "strict procedures" to ensure that information is "complete and up to date"); § 1681i (requiring that consumer reporting agencies investigate any disputed information); § 1681g (requiring that consumer reporting agencies provide a complete copy of the consumer's file to the consumer).

80.     SEPTA routinely and systemically violates the FCRA stand-alone disclosure requirement by failing to provide "clear and conspicuous" disclosures in writing, in a document that consists solely of the disclosures, that a consumer report may be obtained.

81.     Instead, SEPTA uses extraneous language in its disclosure forms, including, but not limited to, language inquiring about the applicant's educational history, employment history, probation or parole status, and job suitability.

82.     In Congress's judgment, an employer's failure to provide a stand-alone disclosure form is a harm to a consumer sufficient to establish Article III standing.

83.     The FCRA also requires that "before taking any adverse action based in whole or in part on [a consumer report]," the employer taking the adverse action must provide "the consumer to whom the report relates" with:

     (i)     a copy of the report; and

     (ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Consumer Financial Protection] Bureau under section 1681g(c)(3).

15 U.S.C. § 1681b(b)(3)(A)(i) and (ii).

84.     The FCRA defines adverse action as both "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee," and "an action taken or determination that is . . . adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B).

85.     SEPTA has routinely and systematically failed to provide Plaintiffs and other job applicants with their consumer report and a summary of their rights under the FCRA before taking adverse actions against them.

86.     In Congress's judgment, an employer's failure to provide a consumer with his or her consumer report and a summary of his or her rights under the FCRA are both harms sufficient to establish Article III standing.

87.     SEPTA has acted willfully in violating the FCRA. SEPTA knew or should have known its obligations under the FCRA. These obligations are well-established by the plain language of the FCRA, in the promulgations and opinion letters of the Federal Trade Commission, and in longstanding case law. Moreover, SEPTA's form letter denying employment to job applicants expressly references the FCRA, establishing its awareness of the FCRA's requirements. Further, employers like SEPTA are required to certify to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure and authorization requirements. *See* 15 U.S.C. § 1681b(b)(1).

88.    Despite SEPTA's awareness of its legal obligations, it has acted consciously, recklessly and willfully in breaching its known duties and depriving Plaintiffs and other job applicants of their rights under the FCRA.

### *The CHRIA Claim*

89.    The CHRIA provides that, "[f]elony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied."  18 Pa. Cons. Stat. Ann. § 9125(b).

90.    The CHRIA further states that, "[t]he employer shall notify in writing the applicant if the decision not to hire the applicant is based in whole or in part on criminal history record information."  18 Pa. Cons. Stat. Ann. § 9125(c).

91.    SEPTA routinely and systemically violates the CHRIA by considering and denying employment to job applicants based on criminal conviction(s) that do not relate to the applicants' suitability for employment in the positions for which they have applied.

92.    Specifically, SEPTA has a categorical and lifetime ban on hiring anyone with a felony drug conviction for "[a]ll positions which require the operation of a SEPTA vehicles as part thereof, whether or not they are in revenue service" and "[a]ll positions requiring the maintenance, repair or operation of power facilities, substations, towers, signals, vehicles or rolling stock."

93.    SEPTA knew or should have known its obligations under the CHRIA.  These obligations are well-established by the plain language of the CHRIA and in longstanding case law.

94.    Through its actions, SEPTA has acted willfully in violating the requirements of the CHRIA.

## CLASS ACTION ALLEGATIONS

95.     Plaintiffs bring this case as a proposed Class action pursuant to Federal Rule of

Civil Procedure 23 on behalf of themselves and four classes of persons (collectively, the

"Classes").

96.     Messrs. Long, Shipley, and White assert the First Cause of Action against SEPTA

on behalf of the "FCRA Disclosure Class" defined as follows:

> **FCRA Disclosure Class:** All applicants for employment with SEPTA in the
> United States, within two years of the filing of this Complaint through the date of
> final judgment, about whom SEPTA procured a consumer report without
> providing a clear and conspicuous disclosure in writing, in a document that
> consisted solely of the disclosure, before procuring the consumer report, as
> required by 15 U.S.C. § 1681b(b)(2)(A)(i).

97.     Messrs. Long, Shipley and White assert the Second and Third Causes of

Action against SEPTA on behalf of the "FCRA Consumer Report Class" and the "FCRA

Summary of Rights Class" defined as follows:

> **FCRA Consumer Report Class:** All applicants for employment with SEPTA in
> the United States within five years of the filing of the initial Complaint through
> the date of final judgment who were subject to an adverse action based in whole
> or in part on information contained in a consumer report without receiving a copy
> of the consumer report before the adverse action, as required by 15 U.S.C. §
> 1681b(b)(3)(A)(i).

> **FCRA Summary of Rights Class:** All applicants for employment with SEPTA
> in the United States within five years of the filing of the initial Complaint through
> the date of final judgment who were subject to an adverse action based in whole
> or in part on information contained in a consumer report without receiving a
> written description of their rights under the FCRA before the adverse action, as
> required by 15 U.S.C. § 1681b(b)(3)(A)(ii).

98.     Messrs. Long, Shipley, and White assert the Fourth Cause of Action

against SEPTA on behalf of the  "CHRIA Job Denial Class" defined as follows:

> **CHRIA Job Denial Class:**  All applicants for employment with SEPTA in the
> United States within two years of the filing of the initial Complaint through the
> date of final judgment who were denied SEPTA employment involving the

16

operation and/or maintenance of SEPTA non-paratransit vehicles based in whole or in part on a drug-related conviction dating back more than seven (7) years from the decision on their application to SEPTA.

99.     The members of the FCRA Disclosure Class, FCRA Consumer Report Class, FCRA Summary of Rights Class, and CHRIA Job Denial Class are collectively referred to as "Class Members."

100.    Plaintiffs reserve the right to amend the definition of above-defined classes based on discovery or legal developments.

101.    The Class Members identified herein are so numerous that joinder of all members is impracticable.  SEPTA employs approximately 9,000 employees.  Although Plaintiffs do not know the precise number of job applicants harmed by SEPTA's violations of the FCRA and CHRIA, the number is far greater than feasibly could be addressed through joinder.  The precise number is also uniquely within Defendant's possession and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

102.    There are questions of law and fact common to Class Members, and these questions predominate over any questions affecting only individual members.  Common legal and factual questions include, among others:

(a)     whether Defendant violated the FCRA by failing to provide Messrs. Long, Shipley, and White and the FCRA Disclosure Class with a clear and conspicuous disclosure in writing, in a document that consisted solely of the disclosure, prior to procuring their consumer reports for employment purposes, as required by 15 U.S.C. § 1681b(b)(2)(A)(i);

(b)     whether Defendant violated the FCRA by failing to provide Messrs. Long, Shipley, and White and the FCRA Consumer Report Class with a copy of their consumer report before taking adverse action against them in violation of 15 U.S.C. § 1681b(b)(3)(A)(i);

(c)     whether Defendant violated the FCRA by failing to provide Messrs. Long, Shipley, and White and the FCRA Summary of Rights Class with a

written description of their rights under the FCRA before taking adverse action against them in violation of 15 U.S.C. § 1681b(b)(3)(A)(ii);

(d)    whether Defendant violated the CHRIA by denying employment to Messrs. Long, Shipley, and White and the CHRIA Job Denial Class based on their criminal convictions;

(e)    whether Defendant was willful in its noncompliance with the requirements of the FCRA;

(f)    whether Defendant was willful in its noncompliance with the requirements of the CHRIA; and

(g)    whether equitable remedies, injunctive relief, actual damages, statutory damages, compensatory damages, exemplary damages and punitive damages for Class Members are warranted.

103.    Plaintiffs are members of the classes they seek to represent.  SEPTA failed to provide Messrs. Long, Shipley, and White with a clear and conspicuous disclosure in writing, in a document consisting solely of the disclosure, to procure a consumer report for employment purposes before procuring such a report, as required by the FCRA.  SEPTA took adverse action against Messrs. Long, Shipley, and White without first providing them with a copy of their consumer reports and a written summary of their rights under the FCRA.  SEPTA denied Messrs. Long, Shipley, and White employment based on their criminal convictions and without those criminal convictions having sufficient relation to their suitability for employment in the positions involving the operation of SEPTA vehicles, violating the CHRIA.

104.    Plaintiffs' claims are typical of the claims of the classes they seek to represent.  Upon information and belief, it is SEPTA's standard practice to procure consumer reports without first providing a clear and conspicuous disclosure in writing to applicants, in a document that consists solely of the disclosure.  Upon information and belief, it is SEPTA's standard practice to take adverse action against applicants without first providing them with a copy of their consumer reports and a written summary of their rights under the FCRA.  Upon information

18

and belief, it is SEPTA's standard practice to consider felony convictions that do not relate to applicants' suitability for employment involving the operation of SEPTA vehicles when making hiring determinations for employment.  Plaintiffs are entitled to relief under the same causes of action as other Class Members.

105.    Plaintiffs will fairly and adequately represent and protect the interests of the Class Members because their interests coincide with, and are not antagonistic to, the interests of the Class Members they seek to represent.  Plaintiffs have retained Counsel who are competent and experienced in complex class actions, including litigation pertaining to criminal background checks, the FCRA, and other employment litigation, and the intersection thereof.  There is no conflict between Plaintiffs and the Class Members.

106.    Class certification of the CHRIA Job Denial Class is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because SEPTA has acted and/or refused to act on grounds generally applicable to the Class Members, making declaratory and injunctive relief appropriate with respect to Plaintiffs and the Class Members as a whole.   The Class Members are entitled to injunctive relief to end Defendant's common, uniform, unfair discriminatory—and illegal—policies and practices.

107.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) for the FCRA Disclosure Class because common questions of fact and law predominate over any questions affecting only individual Class Members.  For example, SEPTA has maintained a common policy of failing to provide a clear and conspicuous disclosure in writing, in a document that consisted solely of that disclosure, before procuring a consumer report. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Class Members have been damaged and are entitled to recovery as

19

a result of Defendant's uniform policies and practices.  Because SEPTA has maintained a

common policy of failing to properly inform Class Members of their rights under the FCRA,

many Class Members are likely unaware that their rights have been violated.

108.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure

23(b)(3) for the FCRA Consumer Report Class and the FCRA Summary of Rights Class because

common questions of fact and law predominate over any questions affecting only individual

Class Members.  For example, SEPTA has maintained a common policy of taking adverse action

without first providing applicants with copies of their consumer reports and/or a written

description of their rights under the FCRA.  Moreover, a class action is superior to other

available methods for the fair and efficient adjudication of this litigation.  Class Members have

been damaged and are entitled to recovery as a result of Defendant's uniform policies and

practices.  Because SEPTA has maintained a common policy of failing to properly inform Class

Members of their rights under the FCRA, many Class Members are likely unaware that their

rights have been violated.

109.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure

23(b)(3) for the CHRIA Job Denial Class because common questions of fact and law

predominate over any questions affecting only individual Class Members.  For example, SEPTA

has maintained a common policy of denying employment because of drug related convictions.

Moreover, a class action is superior to other available methods for the fair and efficient

adjudication of this litigation.  Class Members have been damaged and are entitled to recovery as

a result of Defendant's uniform policies and practices.

110.    The amount of each Class Member's individual claim is also small compared to

the expense and burden of individual prosecution of this litigation.  The FCRA and CHRIA have

statutorily specified damages, which Class Members will prove at trial are warranted, that will render calculation of damages for Class Members highly straightforward.  The propriety and amount of exemplary and punitive damages are based on Defendant's conduct, making these issues common to Class Members.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**SEPTA's Failure to Provide Clear and Conspicuous Disclosure**
**Before Procurement of Consumer Report**
**(15 U.S.C. § 1681b(b)(2)(A)(i), Brought by Messrs. Long, Shipley, and White on Behalf of Themselves and the FCRA Disclosure Class)**

111.    Messrs. Long, Shipley, and White, on behalf of themselves and the FCRA Disclosure Class, incorporate the preceding paragraphs as alleged above.

112.    SEPTA violated the FCRA by procuring consumer reports on Messrs. Long, Shipley, and White and the FCRA Disclosure Class without making the stand-alone disclosure required by the FCRA. *See* 15 U.S.C. § 1681b(b)(2)(A).

113.    SEPTA's policy caused concrete injury (including the risk of harm) to Messrs. Long, Shipley, and White and the FCRA Disclosure Class, including because the form's:

(a) extraneous information causes confusion about the purpose of the authorization, when Congress created this provision so that consumers would undoubtedly know they were authorizing a consumer report.

(b) extraneous information impedes consumers from learning of their substantive rights conferred by the FCRA, including those pertaining to ensuring the reports' accuracy, confidentiality, and fairness; and

(c) requests for additional information including consumers' contact information, education history, and criminal history provides an opportunity for job applicants to incorrectly or incompletely answer, which has the risk of leading to consumers' denial of employment.

114.    Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Messrs. Long, Shipley, and White and the FCRA Disclosure Class.

115.    SEPTA's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2), and that Defendant certified that it would comply with 15 U.S.C. § 1681b(b)(2).

116.    SEPTA's willful conduct is still further reflected by the following:

(a)    The FCRA was enacted in 1970, Defendant was founded in 1963; Defendant has had almost fifty years to become compliant;

(b)    Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

(c)    Defendant repeatedly and routinely uses the same unlawful documents with all of its employees and applicants on whom it procured consumer reports or otherwise failed to provide them with the required stand-alone disclosure;

(d)    Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer reports without first disclosing in writing to the consumer *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

(e)    By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

117.    As a result of SEPTA's actions, Messrs. Long, Shipley, and White and the FCRA Disclosure Class Members have been deprived of their consumer rights and prevented from making informed decisions about whether to permit SEPTA to procure their personal information.

118.    SEPTA's willful conduct makes it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### SECOND CLAIM FOR RELIEF
**SEPTA's Failure to Provide Consumer Reports Before Taking Adverse Action
(15 U.S.C. § 1681b(b)(3)(A)(i), Brought by Messrs. Long, Shipley and White on Behalf of Themselves and the FCRA Consumer Report Class)**

119.    Messrs. Long, Shipley, and White, on behalf of themselves and the FCRA Consumer Report Class, incorporate the preceding paragraphs as alleged above.

120.    SEPTA violated the FCRA by taking adverse employment actions against Messrs. Long, Shipley and White and the FCRA Consumer Report Class based in whole or in part on the information contained within their consumer reports.

121.    Before taking these adverse employment actions, SEPTA failed to provide Messrs. Long, Shipley and White and the FCRA Consumer Report Class with a copy of their consumer reports and a reasonable amount of time to respond.

122.    SEPTA's policy caused concrete injury (including the risk of harm) to Messrs. Long, Shipley, and White and the FCRA Consumer Report Class, including because they could not:

>    (a) evaluate information contained in the consumer reports to ensure accuracy;
>
>    (b) challenge and correct information;
>
>    (c) explain the circumstances surrounding misleading (even if accurate) information; and
>
>    (d) explain why information reported should not preclude employment.

123.    Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Messrs. Long, Shipley, and White and the FCRA Disclosure Class.

124.    SEPTA's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(3)(A).

125.    SEPTA's willful conduct is still further reflected by the following:

(a) The FCRA was enacted in 1970, Defendant was founded in 1963; Defendant has had almost 50 years to become compliant;

(b) Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

(c) Defendant repeatedly and routinely took adverse action based in whole or in part on information contained in a consumer report before providing consumers with a copy of the consumer report; and

(d) By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

126.    As a result of SEPTA's actions, Messrs. Long, Shipley, and White and the FCRA Consumer Report Class have been deprived of their consumer rights and prevented from timely and effectively contesting the adverse action.

127.    SEPTA's willful conduct makes it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### THIRD CLAIM FOR RELIEF
**SEPTA's Failure to Provide Summary of FCRA Rights Before Taking Adverse Action**
**(15 U.S.C. § 1681b(b)(3)(A)(i), Brought by Messrs. Long, Shipley, and White on Behalf of Themselves and the FCRA Summary of Rights Class)**

128.    Messrs. Long, Shipley and White, on behalf of themselves and the FCRA Summary of Rights Class, incorporate the preceding paragraphs as alleged above.

129.    SEPTA violated the FCRA by taking adverse employment actions against Messrs. Long, Shipley, and White and the FCRA Summary of Rights Class based in whole or in part on the information contained within their consumer reports.

130.     Before taking these adverse employment actions, SEPTA failed to provide Messrs. Long, Shipley, and White and the FCRA Summary of Rights Class with a written description of their rights under the FCRA.

131.     SEPTA's policy caused concrete injury (including the risk of harm) to Messrs. Long, Shipley, and White and the FCRA Summary of Rights Class, including because they could not learn of their rights under the FCRA.

132.     Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Messrs. Long, Shipley, and White and the FCRA Disclosure Class.

133.     SEPTA's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(3)(A).

134.     SEPTA's willful conduct is still further reflected by the following:

(a) The FCRA was enacted in 1970, Defendant was founded in 1963; Defendant has had almost 50 years to become compliant;

(b) Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

(c) Defendant repeatedly and routinely took adverse action based in whole or in part on information contained in a consumer report before providing consumers with a written description of their rights under the FCRA; and

(d) By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

135.     As a result of SEPTA's actions, Messrs. Long, Shipley, and White and the FCRA Summary of Rights Class have been deprived of their consumer rights and prevented from timely and effectively contesting the adverse action.

136.   SEPTA's willful conduct makes it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## FOURTH CLAIM FOR RELIEF
### SEPTA's Violation of CHRIA's Use of Information Provision
(18 Pa. Cons. Stat. Ann. § 9125(b), Brought by Messrs. Long, Shipley, and White on Behalf of Themselves and the CHRIA Job Denial Class)

137.   Messrs. Long, Shipley, and White, on behalf of themselves and the CHRIA Job Denial Class, incorporate the preceding paragraphs as alleged above.

138.   Messrs. Long, Shipley, and White and the CHRIA Job Denial Class have criminal drug convictions that SEPTA considered when deciding not to offer them employment involving the operation of SEPTA vehicles.

139.   Messrs. Long, Shipley, and White and the CHRIA Job Denial Class's convictions are older than seven years and not related to their suitability for employment involving the operation or maintenance of SEPTA non-paratransit vehicles.

140.   Messrs. Long, Shipley, and White and the CHRIA Job Denial Class have been aggrieved by SEPTA's denials of employment.

141.   As a result of its actions, SEPTA is liable to Messrs. Long, Shipley, and White and the CHRIA Job Denial Class for injunctive relief, damages and reasonable costs of litigation and attorneys' fees, pursuant to 18 Pa. Cons. Stat. Ann. § 9183(a)-(b).

142.   SEPTA's conduct has been willful, rendering it liable for exemplary and punitive damages, pursuant to 18 Pa. Cons. Stat. Ann. § 9183(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Members pray for relief as follows:

(a)     Certification of Plaintiffs' FCRA and CHRIA claims as a class action pursuant to Federal Rule of Civil Procedure 23;

(b)     Designation of Plaintiffs as representative of the Class Members;

(c)     Designation of Plaintiffs' counsel of record as Class Counsel;

(d)     An order enjoining SEPTA from engaging in further unlawful conduct in violation of the FCRA and CHRIA;

(e)     An award of all statutory damages awardable for violations of the FCRA including punitive damages for each violation found to be willful;

(f)     An award of all statutory damages awardable for violations of the CHRIA including actual and real damages for each violation, and exemplary and punitive damages for each violation found to be willful;

(g)     An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(h)     Pre-judgment and post-judgment interest, as provided by law;

(i)     Payment of a reasonable service award to Plaintiffs, in recognition of the services they have rendered and will continue to render to Class Members, and the risks they have taken and will take; and

(j)     Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury in this action.

Dated:  May 26, 2016

Respectfully submitted,

By:

_____

Ossai Miazad

**OUTTEN & GOLDEN LLP**

3 Park Avenue, 29th Floor

New York, NY 10016

Tel.: (212) 245-1000

Adam T. Klein (*pro hac vice* filed)

Ossai Miazad (*pro hac vice* filed)

Lewis M. Steel (*pro hac vice* filed)

Christopher M. McNerney (*pro hac vice* filed)
Cheryl-Lyn Bentley (*pro hac vice* filed)

**LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW**
Jon Greenbaum (*pro hac vice* filed)
Mateya B. Kelley (*pro hac vice* filed)
1401 New York Ave., NW
Washington, DC 20005
Tel.: (202) 662-8600

**PHILADELPHIA LAWYERS FOR SOCIAL
EQUITY**
Michael Lee
Pennsylvania Bar No. 307008
Michael Hardiman
Pennsylvania Bar No. 27018
1501 Cherry Street
Philadelphia, PA 19102
Tel.: (215) 995-1230

**PUBLIC INTEREST LAW CENTER**
Benjamin D. Geffen
Pennsylvania Bar. No. 310134
1709 Benjamin Franklin Parkway, 2d Floor
Philadelphia, PA 19103
Tel.: (267) 546-1308

**WILLIG, WILLIAMS & DAVIDSON**
Ryan Allen Hancock
Pennsylvania Bar No. 92590
Danielle Newsome
Pennsylvania Bar No. 320772
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Tel.: (215) 656-3679

*Attorneys for Plaintiffs and proposed Class Members*