IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANK LONG,** *et al.*, : | |
| : | |
| **Plaintiffs,** : | |
| : | **CIVIL ACTION** |
| v. : | |
| : | **NO. 16-1991** |
| **SOUTHEASTERN PENNSYLVANIA** : | |
| **TRANSPORTATION AUTHORITY,** : | |
| : | |
| **Defendant.** : | |

## ORDER

**AND NOW**, this <u>8th</u> day of October, 2021, upon consideration of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Final Certification of Settlement Classes ("Motion for Final Approval") (ECF No. 91), Motion for Approval of Service Awards ("Motion for Service Awards") (ECF No. 92), and Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") (ECF No. 93), and the Fairness Hearing held October 7, 2021, **IT IS HEREBY ORDERED AND DECREED** that the Motions are **GRANTED**.

**IT IS FURTHER ORDERED** that:

### I.   Final Approval of Settlement

1. The Court grants final approval of the settlement memorialized in the Settlement Agreement and Release ("Settlement Agreement"), attached to the Declaration of Ossai Miazad in Support of Plaintiffs' Motions for Final Approval, Service Awards, and Attorneys' Fees ("Miazad Decl."), as Exhibit A.

2. Considering "the probable cost, in both time and money, of continued litigation,"

the Court concludes that the Class would benefit from settling the class claims.[1] *Erie Cty. Retirees Ass'n, v. Cty. of Erie, Pa.*, 192 F. Supp. 2d 369, 373 (W.D. Pa. 2002) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).

3. The Court determines that the parties have completed enough discovery to recommend settlement, such that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted).

4. The Court finds that there are significant risks involved with proceeding with litigation. *In re Cendant Corp. Litig.*, 264 F.3d 201, 237 (3d Cir. 2001); *In re General Motors*, 55 F.3d at 816.

5. The Court further notes that establishing a class and maintaining it through trial would not be simple, as "proceeding to trial would always entail the risk, even if slight, of decertification." *In re Cendant Corp.*, 109 F. Supp. 2d 235, 262 (D.N.J. 2000), *aff'd sub nom. In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001).

6. The Court finds that Defendant's ability to withstand a greater judgment is uncertain, and settlement alleviates uncertainty about Defendant's financial condition. *See Bonett v. Educ. Debt Servs., Inc.*, No. 01 Civ. 6528, 2003 WL 21658267, at *7 (E.D. Pa. May 9, 2003) (noting that, although defendant is "stable today and would most likely be able to withstand a greater judgment than that offered by the proposed settlement, there are no assurances that [defendant] would continue to experience a healthy economic outlook, especially in the event that the settlement were disproved and the class action were to proceed to trial").

---

[1] Unless otherwise indicated, all capitalized terms have the meaning set forth in the Settlement Agreement.

7. The settlement provides significant monetary and injunctive relief to the Class Members:

    a. Pursuant to an allocation formula from a Gross Settlement Fund of $3,600,000, CHRIA Class Members will be eligible to receive a settlement award of up to $35,000, with a floor of $5,000, and FCRA Class Members will be eligible to receive a settlement payment of $250 (*see* Miazad Decl., Ex. A (Settlement Agreement) § 3.4);[2]

    b. CHRIA Class Members will be eligible for priority hiring for the positions to which they previously applied (or a substantially similar position) and were disqualified based on a criminal drug conviction (*see id*. § 3.3(A));

    c. Defendant will rescind the challenged policy pursuant to a binding agreement (*see id*. § 3.3(C));

    d. Defendant will retain a neutral third-party expert to review its criminal history screening policies and practices and make recommendations for prospective changes (*see id*. § 3.3(B)).

8. The Court finds that the reaction of the Class has been positive. *See In re Prudential Ins. Co. of Am. Sales Practices Litig*, 148 F.3d 283, 317 (3rd Cir. 1998). Of the 1,063 Class Members, only one (less than .1% of the Class) objected, and no Class Member has opted out. *See Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("[T]he low number of objections or requests for exclusion bolsters the contention that this is not an unreasonable settlement."). Additionally, the claims rate (approximately 25% for the FCRA

---

[2] These payments are subject to a reduction formula in the event that the amount claimed by Class Members exceeds the amount of the Net Settlement Fund available for distribution. *See* Miazad Decl., Ex. A (Settlement Agreement) §3.4(C).

Class and 40% for the CHRIA Class) reflects a very good response, particularly considering that the FCRA Class includes claims dating back to 2011 and the CHRIA Class includes claims dating back to 2010.

9. The Court has considered the objection to the settlement and overrules it. The objector contends that the settlement recovery should be higher to account for the accrual of seniority and lost years of potential service in SEPTA's pension plan. However, at the final approval stage, "[t]he role of a district court is not to determine whether the settlement is the fairest possible resolution." *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013). Instead, "[t]he Court must determine whether the compromises reflected in the settlement . . . are fair, reasonable, and adequate when considered from the perspective of the class as a whole." *Id*. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is fair, reasonable, and adequate.

10. Together, the Court finds that the $3,600,000 settlement amount and meaningful injunctive relief represent a good value given the attendant risks of litigation, even though the monetary recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. *See In re AT & T Corp.,* 455 F.3d 160, 169 (3d Cir. 2006) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted); *see also In re Greenwich Pharm. Secs. Litig.,* No. 92 Civ. 3071, 1995 WL 251293, at *5 (E.D. Pa. Apr. 26, 1995) (approving a $4.3 million settlement where the plaintiff's estimate of total damages was $100 million, and noting that "[p]laintiff's most optimal estimate must be tempered by defendants' repeated and vigorous claim of no damages").

II.     **Dissemination of Notice**

11.     The Settlement Administrator sent the Court-approved Notice and Claim Form ("Notice") by First-Class Mail to each Class Member at his or her last known address (with re-mailing of returned notices). The Settlement Administrator also sent the Notice via email to Class Members for whom Defendant provided email addresses and posted the Notice on the settlement website.

12.     The Court finds that the Notice fairly and adequately advised Class Members of the terms of the settlement, as well as their right to opt out of the class, to object to the settlement, to appear at the fairness hearing, and to submit a claim form. Class Members were provided the best notice practicable under the circumstances. The Court further finds that the Notice and its distribution comported with all constitutional requirements, including those of due process.

### III.     Final Certification of the Proposed Rule 23 Settlement Class

13.     On June 1, 2021, the Court preliminarily certified the Class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* ECF No. 88 (Preliminary Approval Order) ¶ 4. No motion to decertify the Class has been filed, and the Class remains certified for settlement purposes because the requirements under Rule 23 have been met.

14.     Accordingly, the Court grants final certification of the following CHRIA Class and FCRA Class under Fed. R. Civ. P. 23(e), for settlement purposes:

> **CHRIA Class**: Applicants who applied to SEPTA for positions as Bus Operators, Maintenance Custodian Drivers, Railroad Conductor/Engineer Trainees, Mechanics, Railroad Engineers, Surface Train Operators, Rail Vehicle Equipment Welders, Rail Vehicle Machinists, Rail Vehicle Electronic Maintainers, Transportation Managers, Railroad Supervision Managers and/or any other position that requires the operation and/or maintenance of a SEPTA vehicle, between April 27, 2010, and August 26, 2018, and were denied in whole or in part based on drug conviction(s). Excluded from the CHRIA Class are applicants with a violent felony conviction on their consumer report within two years of their application to SEPTA.

**FCRA Class**: All applicants to SEPTA who were denied employment by SEPTA, from April 27, 2011, through August 26, 2018, because of their criminal history.

15. Plaintiffs meet all of the requirements for class certification under Rules 23(a), (b)(2), and (b)(3), confirming the Court's finding at preliminary approval.

16. Plaintiffs satisfy Rule 23(a)(1) because there are approximately 1,033 FCRA Class Members and 300 CHRIA Class Members and, thus, joinder is impracticable. *See Jones v. Commerce Bancorp, Inc.*, No. 05 Civ. 5600, 2007 WL 2085357, at *3 (D.N.J. July 16, 2007) ("classes of close to one hundred members are sufficient") (*citing Eisenberg v. Gannon*, 766 F.2d 770, 785-86 (3d Cir. 1985)).

17. Plaintiffs satisfy Rule 23(a)(2) because Plaintiffs and the Class Members share common issues of fact and law, including whether SEPTA's criminal history screen violates Pennsylvania's Criminal History Record Information Act ("CHRIA"), 18 Pa.C.S. § 9125, whether SEPTA willfully violated the CHRIA, and whether SEPTA failed to provide applicants with a copy of their consumer report under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*. *See Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 419 (D.D.C. 2017) (finding that class of applicants in lawsuit challenging employer's criminal history hiring screen satisfied the commonality requirement); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 243 (S.D.N.Y. 2014) (same); *see also Pickett v. Simos Insourcing Sols., Corp.*, No. 17 Civ. 1013, 2017 WL 3444755, at *1 (N.D. Ill. Aug. 10, 2017) (FCRA class satisfied commonality for settlement purposes).

18. Plaintiffs satisfy Rule 23(a)(3) because, like the Class Members, Plaintiffs allege that they applied to covered positions at SEPTA during the relevant period and were denied employment pursuant to SEPTA's blanket screening policy, and that SEPTA failed to provide them with a copy of their background check prior to denying them employment. Plaintiffs and

6

the Class Members make the same legal arguments in support of their claims. *See Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994) (The central inquiry is whether "the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.") (internal quotation marks omitted).

19. Plaintiffs satisfy Rule 23(a)(4) because Plaintiffs suffered the same injury as the Class Members and share the Class's interest in establishing the unlawfulness of SEPTA's screening policy, including SEPTA's alleged failure to provide timely copies of their consumer reports, and obtaining monetary and injunctive relief. *See E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("class representative must be part of the class and possess the same interest and suffer the same injury"). In addition, Plaintiff's counsel are competent and well-versed in this area of law. *See Mayer v. Driver Sols., Inc.*, No. 10 Civ. 1939, 2012 WL 453234, at *2 (E.D. Pa. Feb. 13, 2012); *Times v. Target Corp.*, No. 18 Civ. 02993, 2018 WL 3238821, at *1 (S.D.N.Y. May 14, 2018); *Keels v. Geo Grp., Inc.*, No. 15 Civ. 6261, 2017 WL 4477000, at *1 (E.D.N.Y. Oct. 1 2017); *Houser*, 28 F. Supp. 3d at 248; *see also Woods v. Marler*, No. 17 Civ. 4443, 2018 WL 1439591 (E.D. Pa. Mar. 22, 2018); *Rivera v. Lebanon Sch. Dist.*, No. 11 Civ. 147, 2012 WL 2504926 (M.D. Pa. June 28, 2012).

20. Plaintiffs' CHRIA claim for injunctive relief satisfies Rule 23(b)(2) because SEPTA allegedly applied the challenged criminal history screening policy uniformly to all members of the CHRIA Class and thus the CHRIA Class as a whole shares the same interest in obtaining the injunctive relief provided by the settlement. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or

declared unlawful only as to all of the class members or as to none of them.") (internal quotation marks omitted).

21. Plaintiffs' claims for monetary damages satisfy Rule 23(b)(3).

22. Plaintiffs' common contentions predominate over any issues affecting only individual Class Members. *See Times*, 2018 WL 3238821, at *1 (finding allegations that defendants excluded applicants based on criminal history predominated for settlement purposes); *Easterling v. Conn. Dep't of Corr.*, 278 F.R.D. 41, 48-50 (D. Conn. 2011) (finding predominance satisfied as to whether challenged physical fitness test had disparate impact on female applicants or was justified by business necessity); *Pickett*, 2017 WL 3444755, at *1 (predominance satisfied in FCRA class settlement).

23. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996).

**IV.    Service Awards**

24. The Court approves Service Awards to Plaintiffs in the amount of $15,000 each in light of the time and effort Plaintiffs expended, the risks they endured in order to vindicate the rights of absent Class Members over five and one-half years of litigation, appeal, and settlement discussions, and the awards that have been approved in similar cases. *See, e.g.*, *Alvarez v. BI Inc.*, No. 16 Civ. 2705, 2020 WL 1694294, at *7 (E.D. Pa. Apr. 6, 2020); *Stagi v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 564, 574 (E.D. Pa. 2012); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06 Civ. 3202, 2009 WL 2137224, at *12 (E.D. Pa. July 16, 2009); *Godshall v. Franklin Mint Co.*, No. 01 Civ. 6539, 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1,

2004); *In re Linerboard Antitrust Litig.*, No. 98 Civ. 5055, 2004 WL 1221350, at *19 (E.D. Pa. June 2, 2004); *Badia v. HomeDeliveryLink, Inc.*, No. 12 Civ. 07097, 2015 WL 5666077, at *9 (D.N.J. Sept. 25, 2015); *Mentor v. Imperial Parking Sys., Inc.*, No. 05 Civ. 7993, 2010 WL 5129068, at *2 (S.D.N.Y. Dec. 15, 2010).

25. Plaintiffs incurred significant risks to their reputations and employment by challenging Defendant's criminal history policy in a public forum. *See Taha v. Bucks Cty. Pa.*, No. 12 Civ. 6867, 2020 WL 7024238, at *10 (E.D. Pa. Nov. 30, 2020) (Plaintiff's "criminal history will forever be public due to this litigation"). This includes the public disclosure of Plaintiffs' criminal histories to bring this case and effectuate relief for the Class. *See* Devah Pager et al., *Discrimination in a Low-Wage Labor Market: A Field Experiment*, 74 Am. Soc. Rev. 777, 785-86 (2009).

26. Plaintiffs were also closely involved in every aspect of the litigation and settlement process. Plaintiffs provided factual information to Class Counsel, responded to 14 interrogatories and over 60 document requests, searched for and provided counsel with documents in their possession (including emails), reviewed documents, and assisted with preparing Class Counsel for mediation. Plaintiffs further worked closely with Class Counsel to review and provide feedback on the terms of the Settlement Agreement and have stayed actively involved during the settlement approval process.

V. **Award of Fees and Costs to Class Counsel**

27. On June 1, 2021, the Court appointed Outten & Golden LLP, Lawyers' Committee for Civil Rights Under Law, Public Interest Law Center, and Willig, Williams & Davidson as Class Counsel because they meet all of the requirements of Fed. R. Civ. P. 23(g). *See* ECF No. 88 (Preliminary Approval Order) ¶ 15.

28. Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims.

29. Class Counsel have substantial experience prosecuting and settling employment class actions and civil rights litigation and are well-versed in class action law.

30. The work that Class Counsel have performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel have committed substantial resources to prosecuting this case.

31. The Court finds that the factors set forth in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) and *In re Prudential Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) weigh in favor of granting Plaintiffs' request for attorneys' fees in the amount of $1,200,000, or one-third of the fund.

32. The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is favored in this Circuit. *See In re Prudential*, 148 F.3d at 333.

33. Class Counsel's request for one-third of the fund is reasonable and well within the range of fee awards in similar cases. *See, e.g., Mayer*, 2012 WL 3578856, at *4; *Rossini v. PNC Fin. Servs. Grp., Inc.*, No. 18 Civ, 1370, 2020 WL 3481458, at *19 (W.D. Pa. June 26, 2020); *see also Taha*, 2020 WL 7024238, at *9; *Myers v. Jani-King of Philadelphia, Inc.*, No. 09 Civ. 1738, 2019 WL 4034736, at *11 (E.D. Pa. Aug. 26, 2019); *Devlin v. Ferrandino & Son, Inc.*, No. 15 Civ. 4976, 2016 WL 7178338, at *1 (E.D. Pa. Dec. 9, 2016); *Stoner v. CBA Info. Servs.*, 352 F. Supp. 2d 549, 553 (E.D. Pa. 2005); *Erie*, 192 F. Supp. 2d at 383 (W.D. Pa. 2002).

34. Additionally, while Plaintiffs seek one-third of the monetary settlement fund for fees, Plaintiffs' request does not incorporate the monetary value of the priority hiring and other

programmatic relief available under the settlement, which would substantially increase the size of the petition. *See Stagi*, 880 F. Supp. 2d at 568.

35. The considerable time and effort that Class Counsel devoted to this case, more than 3,910 hours of attorney, paralegal, and staff time over five and one-half years, weigh strongly in favor of the requested fees. *See Stagi*, 880 F. Supp. 2d at 570 (expenditure of 3,095 hours "represents a substantial commitment to this litigation and weighs in favor of approving the fee request").

36. The lodestar cross-check strongly supports approval of Plaintiffs' fee request.

37. The Court also awards Class Counsel reimbursement of their out-of-pocket litigation expenses in the amount of $70,052.16, which the Court deems to be reasonable. Class Counsel's litigation expenses were reasonably incurred in the prosecution of the action and adequately documented. *See Harshbarger v. Penn Mut. Life Ins. Co.*, No. 12 Civ. 6172, 2017 WL 6525783, at *6 (E.D. Pa. Dec. 20, 2017).

38. The attorneys' fees awarded and the amount in reimbursement of litigation expenses shall be paid from the settlement fund.

## VI.  Settlement Administration Costs

39. The Court approves the Settlement Administrator's costs and expenses in the amount of $48,000.00. This amount shall be paid from the settlement fund.

## VII.  Release and Dismissal of Claims with Prejudice

40. Within ten (10) days of the Effective Date, Defendant will transfer $3,600,000.00 to the Settlement Administrator.

41. The Settlement Administrator will distribute the Settlement Checks, Service Awards, and attorneys' fees and costs in accordance with the terms of the Settlement Agreement,

subject to ministerial extensions of time upon agreement by the Parties.

42. This litigation is dismissed with prejudice, as are all released claims in accordance with Section 5 of the Settlement Agreement.

43. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement.

44. The Parties shall abide by all other terms of the Settlement Agreement and this Order.

**BY THE COURT:**

**/s/ Petrese B. Tucker**
_____
**Hon. Petrese B. Tucker, U.S.D.J.**